## STATE *EX REL.* STEPHENS v. COMMISSIONERS OF PILOTAGE OF BEAUFORT.

1. *Mandamus* is an appropriate remedy to compel a board of pilotage commissioners to reverse their action in suspending a pilot from service for alleged misconduct.   MR. JUSTICE McIVER, *not concurring.*
2. Facts found by commissioners of pilotage in the investigation of the conduct of a pilot in service within the territorial limits of their jurisdiction, cannot be reviewed in proceedings by *mandamus.*
3. Under the pilotage law of this State the board of pilotage commissioners have the right to suspend a pilot for dereliction of any duty attaching to his office, whether specifically mentioned in the statute as a cause for removal or not.
4. Taking a pilot boat off of her regular station and to another port without the owner's knowledge, and putting a pilot on board an outward

bound vessel without provision made for taking the said pilot off again, are derelictions of duty on the part of the pilot so acting.

This was an original proceeding in this court, and is sufficiently stated in the opinion.

*Mr. J. B. Howe*, for relator.

*Mr. W. J. Verdier*, contra.

July 3, 1885.    The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON.    This case, like the case of *The State ex rel. George McDonald* v. *William A. Courtenay and others*, Pilotage Commissioners of the Port of Charleston (*post*, p. 180), is within the original jurisdiction of this court, and, like that case, seeks to reverse the action of the pilotage commissioners herein, by *mandamus*, requiring the said pilotage commissioners to vacate an order made by said board on April 23, 1885, suspending the petitioner as pilot of the port and harbor of Port Royal and St. Helena, &c.    This case, however, does not involve, as did the case above referred to, the regularity simply of the proceedings had by the board, but it raises the question whether the charge which was found against the petitioner was of a character which authorized his suspension.

The charge was as follows:  "That Charles Stephens violated his duty under the pilotage law, that while on board of the pilot boat Bertha, No. 3, belonging to Captain T. B. Buckley, to wit, on October 25, 1884, he combined with one John Casey, in charge of said pilot boat, contrary to law, to take her off of her regular station without the knowledge or consent of the owner, and assisted in carry the said boat to Charleston, S. C. ; and also in placing a pilot on board an outward bound vessel, making no provision for taking the said pilot off, and the said pilot was compelled to remain on board the said vessel twenty-four hours before he was relieved by another boat, the captain and crew of which had to take him off and bring him to Charleston."    In the return to the rule it is stated that the board, after full investigation of this charge, Stephens being allowed the fullest liberty

of defence, and being represented by counsel, were satisfied of the truth of the charge, and believing the same to be in violation of the law of the State and of the rules and regulations of said board, "did sentence the said pilot Stephens to be suspended for three months from said April 23, 1885," &c.

No question has been made as to the proceeding by *mandamus* being a legitimate remedy in a case of this kind, where the facts of the case entitle the petitioner to relief. Ordinarily, *mandamus* is proper against a public officer for the discharge of a ministerial duty, to which the petitioner shows himself of right entitled, and for the breach of which he has no other adequate redress. Or it may go against an inferior court, requiring said court to proceed in any matter over which it has jurisdiction, yet refuses action. It cannot, however, issue either to a public officer, or to an inferior court, as to matters requiring the exercise of official judgment, or resting on judicial investigation and discretion. Without entering into the discussion here of the question to which of these classes the respondents belong, to wit, whether they are public officers, or whether they constitute an inferior court charged with special duties and invested with certain jurisdiction, it is sufficient to say that, so far as their *status* is concerned under the cases (*Geter* v. *Commissioners*, 1 *Bay*, 348; *Singleton* v. *Same*, 2 *Id.*, 105), they would be subject to this writ in the discharge of their duty where the necessary facts as to the right of the petitioner and the duty of the respondent, upon which, under the law, the writ is usually demandable, appear. In the two cases above cited a tobacco inspector had been removed from office by the tobacco commissioners, a commission of five, authorized by the general assembly to perform certain powers, among them to appoint tobacco inspectors. The removed officer alleging that he had been improperly removed, applied for a *mandamus* to be restored, and it was granted in each case. In the first (*Geter* v. *Commissioners*) a question as to the jurisdiction of the court was raised, which was promptly overruled, Judge Bay saying: "That he would never sit in the Court of Sessions and suffer its authority over any of the inferior officers of any department in the State to be called in question."

Conceding, then, that the respondents are amenable to *mandamus* proceedings, the question to be considered is, do the facts here authorize the writ requiring the petitioner to be restored to his office? This depends upon the fact whether the charge of which he was convicted constitutes a sufficient legal cause for his removal. As to the truth of this charge resting entirely upon the evidence, we can take no cognizance, because that is a matter of judicial investigation, and cannot be reviewed by *mandamus* proceedings. We must take the facts as found by the commissioners, and confine ourselves to the question whether the charge, assuming it to be true, warranted the sentence.

Under the pilotage law found in General Statutes, page 369, commencing with section 1260, several acts are enumerated and specified as violations of the law, and for which, when committed by a pilot, he may be held responsible—in some by suspension, in others by forfeiture of his license, and in others by pecuniary penalties. For instance, in section 1266 it is provided that a pilot shall not engage in any other business while holding his license or branch, without the permission of the commissioners, on pain of being deprived of his license for twelve months. Nor shall a pilot discontinue to act, nor absent himself at any time from the post or harbor,   *   *   *   except by permission of the commissioners, under the same penalty as above. In section 1268, certain acts are forbidden on pain of forfeiting his license and also the payment of a certain sum to the State. So in section 1279 and several other sections; but it can hardly be contended that the pilotage commissioners are confined to these enumerated and specified acts in their supervision of the pilots appointed by them. The position of a pilot is a very important one—important to commerce, to the safety of vessels, and to the lives of their crews and passengers, and vastly important to the cities and towns built upon the harbors where pilots are needed; and the pilotage commissioners are expected not only to be careful in their appointment, so as to secure safe and reliable officers, but to be watchful afterwards over their conduct and the manner in which they discharge their duties, and to this end something must be left to their discretion in the application of general principles.

It is nowhere enumerated in terms by the pilotage act that a pilot may be suspended or deprived of his license or dealt with in any way by the commissioners if he should fail, without excuse, to repair to ships coming into port, or if he should wilfully disregard a jack hoisted at the foretop masthead of an outward bound vessel. Nor is there any specific penalty provided for recklessly or ignorantly guiding a vessel outside of the channel and upon breakers; but it could not be urged that in acts of this kind the commissioners were powerless because these acts were not specially forbidden in the act. In fact, section 1267 seems to have been intended to provide a general power in the commissioners where it enacts that a majority of the board shall have power and authority to take away the license of a pilot for a given time, or to declare his license null and void, as the nature of the case may demand, upon charge of any dereliction of duty made and proven against him.

In this case, we are satisfied that the act of which the petitioner was convicted was a dereliction of duty. (See the duties of a pilot as specified and mentioned in the oath which he is required to take when appointed, § 1264.) But, in addition to this, one of the acts specially forbidden in section 1266, as stated above, is absenting himself without the permission of the commissioners. Here this pilot was found not only to have absented himself, but to have conspired with another to take away a pilot boat from its station.

It is ordered that the rule be discharged.

MR. JUSTICE MCGOWAN concurred.

MR. JUSTICE MCIVER. I concur in the result, but am not prepared to assent to the proposition that *mandamus* is the proper mode of obtaining the relief sought.